December 21, 2012.

Donald MacAllister
2618 San Miguel Drive, #133
Newport Beach, California 92660
310-924-1303
Defendant in Pro Per

United States District Court, Central District of California.

DENIS O'BRIEN and DIGICEL GROUP LTD, Plaintiff(s), versus DONALD MACALLISTER.

Case Number SACV12-01965JVS (ANx)

"Pro Per: ANSWER or RESPONSE",

Jury Trial Demanded: Yes.


"Defendant Donald MacAllister answers as follows to the complaint of Plaintiff Denis O'Brien and Digicel Group Ltd. as follows."

## ANSWER TO COMPLAINT.

1. Denied.
2. Denied.
3. Denied.
4. Admitted.
5. Defendant admits This Court has jurisdiction over the subject matter of this claim and this is a dispute between "citizens of a state (Mr. MacAllister) and citizens or subjects of a foreign state (Mr. O'Brien)." Defendant Denies actively interfering with a billion-dollar business opportunity rather than submitting valid petitions to lawmakers concerning previously published information and questions of public interest about a public figure. Defendant Denies improperly requesting funds from Mr. O'Brien beyond the proceeds of an unpaid 2003 100K EURO investment in Digicel via check #441834 drawn from Allied Irish Bank June 25, 2003 and cashed by Denis O'Brien in Bank of Ireland on July 3, 2003. Prior to Defendant making 100K EURO investment in Digicel Denis O'Brien had advised Defendant he was making a gift to Defendant of US $100,000.00 which he subsequently agreed to provide by way of

stock options in Digicel. Defendant admits submitting a proposal opportunity invited by Plaintiff May 16, 2009 as compensation for Plaintiff's admission of wrongful withholding of knowledge of the wrongful killing of Defendants mother since August 31, 1972.
6. Defendant admits venue is proper. Defendant Denies making any false statements regarding public figure Denis O'Brien.
7. Defendant admits Denis O'Brien is his cousin. Defendant Denies indicating Mr. O'Brien and his family have always been kind and loving to him and his family since May 16, 2009 when Denis O'Brien admitted he was withholding information and knowledge of the wrongful killing of Defendant's mother on August 31, 1972.
8. Denied.
9. Denied.
10. Admitted.
11. Defendant admits Denis O'Brien paid Defendant the proceeds of Defendants 2002 $100,000 US investment in Digicel. Defendant has sued Denis O'Brien in Bermuda Supreme Court August 10, 2011 to recover the proceeds of Defendants unpaid 2003 100K EURO investment in Digicel. (A 100K EURO investment check #441834 drawn from Allied Irish Bank and provided in-person to Denis O'Brien June 25, 2003.) Denis O'Brien cashed Defendant's 100K EURO check in Bank of Ireland on July 3rd, 2003. Defendants nine year old 2003 100K EURO investment is now estimated to be valued at 3-5M EURO without damages, interest and penalties.
12. Denied.
13. Denied.
14. Admitted.
15. Denied.
16. Denied.
17. Admitted.
18. Denied.
19. Denied.
20. Denied.
21. Denied.
22. Admitted.
23. Admitted.
24. Denied.
25. Denied.
26. Denied.
27. Denied.
28. Denied.
29. Denied.
30. Denied.

31. Denied.
32. Denied.
33. Denied.
34. Denied.
35. Denied.
36. Denied.
37. Denied.

### FIRST CLAIM.

38. In response to Paragraph 38, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive, as set forth herein.
39. Admitted.
40. Denied.
41. Denied.
42. Denied.
43. Denied.
44. Denied.
45. Denied.
46. Denied.

### SECOND CLAIM.

47. In response to Paragraph 47, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive, as set forth herein.
48. Admitted.
49. Denied.
50. Denied.
51. Denied.
52. Denied.
53. Denied.
54. Denied.
55. Denied.

### THIRD CLAIM.

56. In response to Paragraph 56, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive as set forth herein.
57. Admitted.
58. Denied.
59. Denied.
60. Denied.
61. Denied.

62. Denied.
63. Denied.
64. Denied.
65. Denied.
66. Denied.

## FOURTH CLAIM.

67. In response to Paragraph 67, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive as set forth herein
68. Denied.
69. Admitted.
70. Admitted.
71. Admitted.
72. Admitted.
73. Denied.
74. Denied.

## FIFTH CLAIM.

75. In response to Paragraph 75, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive as set forth herein.
76. Denied.
77. Denied.
78. Denied.
79. Denied.
80. Denied.
81. Denied.
82. Denied.
83. Denied.
84. Denied.
85. Denied.
86. Denied.
87. Denied.
88. Denied.
89. Denied.

## SIXTH CLAIM.

90. In response to Paragraph 90, Defendant incorporates by reference his allegations, admissions, and denials in response to Paragraphs 1-37, inclusive as set forth herein.
91. Denied.
92. Denied.

93. Denied.
94. Denied.
95. Denied.
96. Denied.
97. Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Defendant's petition emails, questions and opinions were formed and based upon previously published information of public interest about a public figure: information published in Irish newspaper articles March 22, 2011 and October 18-19, 2012. Defendant's opinions were also formed and based upon public documents relating to Denis O'Brien and Digicel available from Telecom Regulators in Jamaica and other Jurisdictions.

Defendant's petition emails contained information previously published in Irish newspaper articles, information which had already damaged the reputation of the Plaintiff before Defendant forwarded the information in petition emails to Lawmakers.

Defendant's petition emails and opinions were true to the best of Defendant's knowledge at the time Defendant sent them. Defendant sent petition emails with a good faith belief they were true. Defendant's petition emails, questions and opinions were formed and based upon public information obtained from Irish newspaper articles published March 22, 2011 and October 18-19, 2012.

On March 22, 2011, Irish newspaper articles indicated Ireland's Moriarty Tribunal had concluded Denis O'Brien had made illegal payments to Ireland's Telecom Minister to secure Ireland's Telecom license.

On October 18-19, 2012, Irish newspaper articles indicated Ireland's Supreme Court had Judged there was sufficient evidence for trial to proceed against Denis O'Brien and others for offenses that are both civil and criminal according to Ireland's Supreme Court Justice Adrian Hardigan--offenses that constitute bribery and corruption of Ireland's Telecom Minister.

Defendant's petition emails, questions and opinions were formed and based primarily upon Irish newspaper articles following the adverse findings announced against public figure Denis O'Brien on March 22, 2011 and October 18, 2012, and from publicly available documents from Telecom Regulators in Jamaica and other jurisdictions.

<u>Denis O'Brien's Use of Legal threats to chill, intimidate, and suppress Freedom of Speech, opinion and public comment</u>: The National Union of Journalists has said that, since 1988, Denis O'Brien has taken 70 separate legal actions against Irish Journalists and media groups. On November 12, 2012, Chief Executive of Transparency International (TI) Ireland, John Devitt met with Margaret Sekaggya, UN special rapporteur, and he informed her of a series of legal threats made by Mr. O'Brien against former Irish Independent reporter Sam Smyth, Sunday Independent columnist, and Trinity lecturer Elaine Byrne, and broadcaster Vincent Brown.

<u>Extortion</u>: Lack of valid claim: It is not possible for Defendant to threaten or cause fear in Denis O'Brien by publishing information that has already been published about Denis O'Brien, information that has already caused Denis O'Brien's reputation to be damaged.

<u>Extortion</u>: Insufficient evidence: It is not possible to threaten a public figure by threatening to publish information that has already been published about that public figure. Defendant's petition emails lacked any threat of harm by publishing information that had already been published about Denis O'Brien in Irish newspaper articles March 22, 2011 and October 18-19, 2012.

Defendant's emails lacked threatening harm as the main information had already been published in multiple Irish newspaper articles on March 22, 2011 and October 18-19, 2012. Defendant's emails presented already published information. This proves the absence of intent to commit a crime.

<u>Absence of threat</u>: Defendant is unable to threaten Plaintiff or anyone by publishing information that has already been published in numerous Irish newspapers, organs of communication with vastly larger circulation than anything Defendant could possibly accomplish, and vastly greater credibility than Defendant could imagine achieving.

It is impossible for Defendant to extort or threaten to extort Plaintiff by publishing already published information, information which has already subjected Denis O'Brien to hatred, contempt and ridicule, information which has already damaged Plaintiffs reputation in Ireland and Internationally.

<u>Lack of Interference With Prospective Economic Advantage</u>: Defendant's questions, opinions and concerns regarding permitting Denis O'Brien to apply for a Myanmar Telecom License: Reasonable cause for concern by Defendant were provided by findings of Ireland's Moriarty Tribunal, March 22, 2011, and by the unanimous Judgement of Ireland's Supreme Court, October 18, 2012.

Surely the findings and judgements of these august bodies provided reasonable cause for Defendant to submit petition emails to US Secretary of State Hillary Rodham Clinton, Chief of Staff Juma Abedin and Myanmar Opposition Leader Ms. San Suu Kyi.

Defendant reviewed Denis O'Brien's sworn Appendix 13 background check Declarations to Jamaica. Denis O'Brien's sworn Appendix 13 background check Declarations to Jamaica appear to make false statements, and fail to provide full and accurate disclosure of existing claims against Denis Obrien before the Moriarty Tribunal.

Defendant's petition emails expressing concerns that Denis O'Brien's current telecom licenses may have been obtained based upon false statements and failure to provide full and accurate disclosure to approximately thirty-one Nations were based upon information already published in Irish newspaper articles March 22, 2011 and October 18-19, 2012, and upon review of publicly available information from Telecom Regulators in Jamaica and other jurisdictions.

Defendant's review of Denis O'Brien's sworn Appendix 13 background check: Declarations for the Jamaican telecom license appear to confirm Defendant's concerns were reasonable and valid, in that Denis O'Brien's certified Appendix 13 background check Declarations appear to contradict the Findings of the Moriarty Tribunal, March 22, 2011, and fail to accurately and fully disclose what have been widely and significantly declared or opined as illegal activities on the part of O'Brien prior to his applying to the Jamaican telecom license.

Summary: Denis O'Brien's sworn Appendix 13 background check Declarations contradict the March 22, 2011 Findings by the Moriarty Tribunal, and Denis O'Brien's sworn Jamaican Appendix 13 background check declarations appear to contradict the evidence which caused Ireland's Supreme Court to rule unanimously October 18-19, 2012 that trial may proceed against Denis O'Brien and others for offenses Ireland's Supreme Court Justice Adrian Hardigan said were both civil and criminal, offenses which constitute bribery and corruption of Ireland's Telecom Minister, offenses which <u>predate</u> Denis O'Brien's sworn background check Declarations to approximately thirty-one Nations. Defendant had with reason and significant basis formed the opinion that Denis O'Brien and Digicel had submitted fraudulent telecom license applications in approximately thirty Nations.

Therefore, Defendant had reasonable cause to petition US Secretary of State Hillary Rodham Clinton and her Chief of Staff, Juma Abedin (who have twice, in past years, volunteered at Defendant's previous foster youth employment

training workshops); and to petition Myanmar Opposition Leader Ms. San Suu Kyi; Ireland's Minister to the EU, Lucinda Creighton; Irish Senator Diarmuid Wilson; Jamaican Opposition Leader Mr. Andrew Holness, and others, to <u>request full and accurate disclosure</u> from Denis O'Brien and Digicel regarding the risks associated with permitting Denis O'Brien and Digicel to participate in Myanmar's telecom license competition.

Defendant's petition emails contained complete and detailed Reference sections, including links to the complete March 22, 2011 Moriarty Tribunal Findings documents, and to the October 18 2012 Ireland Supreme Court Ruling documents. Defendant's petition emails provided the exact Irish Supreme Court Case Number 213, 215, 216/07. Defendant's petition emails provided all recipients with every opportunity to review all relevant documents, and thus to draw their own conclusions.

<u>Defendant Petition and Service History</u>: Defendant previously founded and directed what became the United State's leading employment-readiness training program for foster youth. Over the course of nearly fifteen years, Defendant achieved a record of over 10,000 foster youth trained. In addition to having twice been nominated to testify before the United States Congress, Defendant has received personal commendations from US Secretary of State (then Senator) Hillary Rodham Clinton, and former Chairman of the U.S Securities and Exchange Commission, Christopher Cox. Defendant has a reputable fifteen-year track record of petitioning lawmakers regarding issues of public concern. It is reasonable to claim, for instance, that Defendant's past petition efforts contributed to the passage of the 1999 Federal Chafee Act, to strengthen Federal programs to include employment readiness training for foster care teenagers—a critical survival skill for parentless youth that was, at the time, woefully lacking in the existing government programs.

<u>Denis O'Brien admits withholding knowledge of wrongful killing of Defendants mother:</u> On May 16, 2009, Denis O'Brien informed Defendant that Denis O'Brien has withheld knowledge since August 31, 1972, that opposing driver Michael Smurfit wrongfully killed Defendant's mother in a head-on-auto crash on August 31, 1972. On said date, Denis O'Brien informed Defendant that opposing driver Michael Smurfit is "actually a great guy" because he "had financed the first of Denis O'Brien's forty radio stations" which provided the launch-pad for Plaintiff's estimated $5B fortune. On said date, Denis O'Brien informed Defendant that if Defendant agreed to "let go of the past," Denis O'Brien would "be happy to receive" Defendant's proposal for help in financing a self-storage business.

Plaintiff's May 16, 2009 statements prompted Defendant to invest thousands of dollars, and to retain Cushman and Wakefield's senior self-storage expert, and other consultants, to prepare a professional proposal for Plaintiff. On December 22, 2009, Defendant submitted a 30M EURO proposal (not $27M US) to Denis O'Brien. A proposal for a 15M EURO self-storage facility to be owned and managed by Defendant, and a 15M EURO Trust for nine other family members affected by the crash (copy of proposal available).

Denis O'Brien's May 16, 2009 statements prompted Defendant to retain renowned forensic crash reconstruction experts, Crash Teams Inc., and to retain Irish Crash Investigation Expert Mr. Finn, the former Head of Ireland's Forensic Crash Investigation Unit, to review the crash which killed Defendant's mother, a head-on-car crash which threw the Defendant, at nine years of age, through the windshield at a professionally estimated combined speed of over 85 miles per hour.

Crash Teams Inc.'s Final Report, submitted on March 15, 2010, stated "It is our opinion, that Maureen O'Brien (MacAllister) was not speeding, and was not initially on the wrong side of the road. Her motion to the incorrect side was an attempt to avoid the oncoming Daimler which was in her lane when she first detected it. We have concluded this fatal incident occurred as a result of Michael Smurfit speeding, and driving on the incorrect side of center."

On December 10, 2012 Irish Forensic Crash Investigation Expert Mr. Finn presented his Provisional Findings which concluded:

(1) Neither the weather nor the prevailing road conditions contributed to this collision.
(2) There is sufficient evidence to show that the Daimler driver, Michael Smurfit, was on his incorrect side of the road immediately prior to the impact.
(3) That Michael Smurfit was driving in excess of the posted speed limit of 30 mph.
(4) That Michael Smurfit was in breach of the Road Traffic (Construction Equipment and Use) of Vehicles Regulations 1963, for carrying in excess of the permitted number of passengers
(5) That the overloading of the vehicle caused Michael Smurfit not to have proper control of his vehicle.
(6) I believe, from the statements supplied by the witnesses; there was collusion in the making of those statements.
(7) Maureen O'Brien (MacAllister), on been confronted by imminent danger reacted correctly.

<u>Defendant's Reporting to Irish Police</u>: Defendant first reported the information he had received from Plaintiff to Irish Police on August 4, 2010 then subsequently to Cabinteely Garda Sergeant Dervil Supple in multiple phone calls during 2010-11-12, the most recent of which being on November 6, 2012. Defendant is preparing to submit complete copies of Crash Teams Inc.'s and Mr. Finn's Findings to Irish Police to formally request re-investigation of the crash which wrongfully killed Defendant's mother, and which inflicted severe and lifelong physical and emotional injuries upon Defendant. A copy of initial Irish Police acknowledgement letter is available.

<u>Capacity</u>: Defendant was diagnosed with severe Post Traumatic Stress Disorder (PTSD) on August 13, 2010, due to injuries sustained from being thrown through the windshield at 85 miles per hour in 1972 head-on car crash at nine years old, and due to experiences suffered while in foster care following the crash, and further due to the shock of being informed by long-trusted close relative, Denis O'Brien, on May 16, 2009, that the latter is withholding from Irish Police information and knowledge regarding the wrongful killing of Defendant's mother—Information, for all the Defendant might know, which if revealed, might lead to the conviction of the opposing driver for the wrongful killing of Defendant's mother.

## COUNTER-CLAIMS.

1. Full and accurate disclosure to enable Telecom Regulators in approximately thirty nations to investigate whether the adverse Findings announced March 22, 2011 by Ireland's Moriarty Tribunal and the adverse Judgement announced October 18, 2012 by Ireland's Supreme Court may provide cause for Telecom Regulators to deem the sworn Appendix 13 background check Declarations provided by Denis O'Brien to Telecom Regulators in over thirty nations as Fraudulent.
2. Fair proceeds, damages and interest for Defendants 2003 100K EURO investment in Digicel.
3. Compensation for twenty-two family members affected by Denis O'Brien's criminal withholding of knowledge regarding wrongful killing of Defendant's mother from Irish Police since August 31, 1972.

**h**
## "REQUEST FOR RELIEF".

## Wherefore, Defendant prays as follows:

1. For dismissal of the Plaintiff's action with prejudice;
2. For an order that the Plaintiff shall take no relief from the complaint.
3. For the Costs of the Suit, herein, and
4. For such further Relief as requested, or that the Court deems fair.

December 21, 2012.

*David MacAllister* (signature)

By: Donald I. MacAllister
Defendant in Pro Per.

Certificate of Service: I mailed a copy of my answer to the plaintiff on 12-21-12 in care of Neal Potischman David Polk & Wardwell LLP, 1600 El Camino Real, Menlo Park, California 94025. And a copy to the Clerk of The United States District Court, Central District of California 411 W. 4th St. #1-053, Santa Ana.

PROOF OF SERVICE

1

2

3   I, Donald I. MacAllister (name), declare as follows. I am over the

4   age of 18 years. My address is:

5       53 Greenhouse

6       Irvine, Ca. 92603

7

8

9   On Dec. 21st, 2012 (date), I served the foregoing document described

as:

10

11      Pro Ser Answer or Response

12      Case # SACV12-01965 JVS (ANx)

13

14

15  on all interested parties in this action by placing a true and correct copy thereof in a
    sealed envelope, with first-class postage prepaid thereon, and deposited said
16  envelope in the United States mail in  Irvine, Ca 92603  , addressed
17  to:                              (city, state)

18

19  _____ (name)    _____ (name)

20  _____ (address) _____ (address)

21  _____ (address) _____ (address)

22

23  I declare under penalty of perjury that the foregoing is true and correct.

24
    Executed on  12-21-2012  at  Santa Ana  .
25                  (date)           (place of signing)

26

27      _Donald MacAllister_ (signature)

28      Don MacAllister (name)