Donald MacAllister,
Counterclaimant In Pro Per
2618 San Miguel Drive, Suite 133
Newport Beach, CA 92660
Email: donmacallister8@gmail.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| DENIS O'BRIEN AND DIGICEL GROUP LTD, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD MACALLISTER, <br><br> Defendants. | Case No. SACV12-01965 JVS (ANx) <br><br> **DECLARATION OF DONALD MACALLISTER IN SUPPORT OF OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION TO STAY** <br><br> Date: November 4, 2013 <br> Time: 1:30 p.m. <br> Courtroom: 10C <br><br> Action Filed: November 9, 2012 |

# DECLARATION OF DONALD MACALLISTER

I, Donald MacAllister, declare:

1. I am the Defendant and pro per Counterclaimant in the above-entitled case and if called as a witness, I could and would competently testify to the facts set forth below.

2. At all times relevant to this action, i.e. from 2002 until today, I have resided in the Central District of California. During the same period Denis O'Brien, Plaintiff and Counterclaim Defendant ("O'Brien"), has not been resident or present in the state of California.

3. In 2001, O'Brien promised me a personal gift of $100,000. In 2002 I requested, and O'Brien agreed, that the gift be in the form of an investment (the "first investment") in Plaintiff and Counterclaim Defendant DIGICEL GROUP LTD. ("Digicel"). This investment was confirmed by multiple e-mails between myself and O'Brien. I did not receive a stock certificate, stock option agreement or other documentation from Digicel of this first investment.

4. In 2003, I entered into an agreement with O'Brien to invest a further €100,000 in Digicel (the "second investment"). At O'Brien's invitation, my wife and I met with him in his office in Dublin and personally handed him a bank draft in the amount of €100,000. That draft was cashed on July 3, 2003 at the Bank of Ireland. As with the first investment I received no stock certificate or other documentation from Digicel regarding the second investment.

5. On September 9, 2005 I received a partial payment from Digicel of $55,000 against my first investment.

6. In 2007 I received the balance of the proceeds from my first investment in Digicel. Around that time I asked O'Brien about payment on the second investment. In response I received an e-mail from O'Brien denying knowledge of the second investment but providing no details regarding what had happened to my

2

DECLARATION OF DONALD MACALLISTER
Case No. SACV12-01965 JVS (ANx)

1  €100,000 payment.

2  7. On July 6, 2008, in Dublin, Ireland, I met with Denis O'Brien Sr. ("O'Brien Sr."), O'Brien's father, my uncle and the de facto patriarch of my family. At that meeting we discussed, among other things, my second investment in Digicel. O'Brien Sr. promised me that he would facilitate full resolution of the second investment. Based upon that promise, from a trusted and highly influential member of O'Brien's inner circle authorized to speak on his behalf, I was reassured that my second investment was indeed secure and that I would receive the proceeds from it.

8. On May 16, 2009 I met with O'Brien in Boston and personally discussed the second investment with him. At that meeting O'Brien confirmed receipt of my €100,000 and promised repayment in the form of his own investment in a business proposition I had discussed with him for a self-storage facility. O'Brien requested that I submit a formal business plan with details of start up costs and operating expenses. Based upon O'Brien's promise, I was once more reassured that my second investment was secure and that I would receive the proceeds from my investment.

9. Relying upon the promises of O'Brien and O'Brien Sr., I invested considerable time and money during 2009 developing a business plan for a self-storage facility.

10. In December 2009 I submitted the business plan to O'Brien, as he had requested.

11. On February 11, 2010 in a telephone conference with O'Brien Sr. he once again promised me that my second investment would be repaid. However, during this conversation O'Brien Sr. stated that repayment would now be conditional upon me "letting go of the past." This I took as a reference to investigations I had personally funded into the death of my mother in a 1972 car crash involving two vehicles, one of which was driven by my mother, aunt to

3

O'Brien and sister to O'Brien Sr. The determination of the experts I hired to investigate the crash was that the other driver, Michael Smurfit, was solely at fault. Mr. Smurfit is now, and was at the time of the crash, a prominent Irish businessman. Mr. Smurfit is also a longtime business associate of O'Brien and has invested in various projects with him over the years.

12. While I was concerned about the possible effect continued investigation may have on my second investment, based upon the comments of O'Brien Sr. in our February 2010 telephone conversation, I was not prepared to disregard the findings of the crash investigators up to that point and continued funding the investigation. At this time I was also working with Tony Masi, of Tony Masi Media and Marketing ("Masi"), who was ghost writing a draft manuscript detailing the 1972 crash and investigation, as well as other aspects of my life following that tragedy. The writing process we utilized was for Masi to interview me and then write, in general terms, the details of our conversation. Other contributors to the manuscript included Phil Sherriffs and Jeffrey Quillin. While the manuscript addresses many aspects of the aftereffects of the 1972 crash and my relationship with both O'Brien and O'Brien Sr., it was never intended to be, nor is it, sworn testimony. Rather it was a collaborative effort to tell my life story in broad strokes.

13. During the course of 2010 I faced the growing realization that if I was not prepared to curtail my investigation into the 1972 crash, and specifically Mr. Smurfit's role in it, O'Brien and O'Brien Sr. may not honor their promises to reimburse me for my second investment in Digicel. I reached a determination that I owed it to my mother's memory to pursue my investigations even at the risk of upsetting O'Brien and O'Brien Sr.

14. In 2011, the Moriarty Tribunal in Ireland published findings related to the bribery of a government official by O'Brien to secure advantage in the bidding process to secure a mobile telecommunications license in that country. Concerned

about the effect that these findings could have on Digicel, I filed a lawsuit in Bermuda seeking the proceeds of my second investment in Digicel. Due to the expense involved in litigating in that forum, beyond the initial pleading stage I was unable to continue prosecution of the case.

15. The manuscript of my book, "Blood. Money. Billionaire," was first published on the internet in September 2011.

16. In November 2012 O'Brien and Digicel filed this law suit against me in the Central District of California, thereby submitting to jurisdiction in this venue for the first time.

17. I filed an answer to the Complaint on December 21, 2012 including Counterclaims, one of which was a claim for the proceeds of my second investment in Digicel.

18. On or about January 7, 2013, I was informed by the attorney who was assisting me with settlement discussions, Laura Fleming, that Digicel's in-house counsel, Tom Reynolds, informed her that O'Brien would not personally negotiate with me while my counterclaims were pending.

19. In reliance upon Tom Reynolds' representation that O'Brien would personally engage in settlement discussions with me only if I dismissed my counterclaims, I dismissed my counterclaims in this action, without prejudice, on January 11, 2013.

20. After I dismissed my counterclaims, Digicel's in-house counsel indicated that O'Brien would not personally engage in settlement discussions outside the court ordered mediation process.

21. Neal Potischman finally informed me on or around March 18, 2013 that "you're not getting" the direct negotiations with O'Brien that Tom Reynolds mentioned in his email to Laura Fleming, only negotiations with Mr. O'Brien's attorneys via ADR.

22. I promptly moved for relief from dismissal of the counterclaims and on July 29, 2013 this Court granted my motion as to the second counterclaim for the proceeds of my second investment in Digicel.

23. On August 28, 2013 I attempted to file my counterclaims in pro per.

24. On August 29, 2013 this Court rejected that filing. With the assistance of my defense counsel, Callahan & Blaine, on September 3, 2013 my counterclaims were filed.

25. I have propounded discovery consisting of Interrogatories, Requests for Admission and Requests for Production of Documents that I anticipate will provide further evidence supporting my opposition to the current counterclaim defendants' motion. However, at the time of filing this declaration have not received responses to that discovery, which is due on October 18, 2013. I have also sought dates for the deposition of both O'Brien and Frank O'Carroll, a senior Vice President at Digicel identified in Plaintiffs' Rule 26 disclosures. Counter defendants advise that both travelling internationally and are unavailable for deposition until after the scheduled date for mediation in this matter, currently set for November 14, 2013. I anticipate additional supporting evidence regarding assurances and promises made that delayed my filing of the claims related to my second investment.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 11th day of October 2013, at Irvine, California.

_____
Donald MacAllister

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action; my business address is: **3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707.**

On **October 11, 2013,** I served the foregoing document(s) described as:

**DECLARATION OF DONALD MACALLISTER IN SUPPORT OF OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION TO STAY**

| | |
|---|---|
| Neal A. Potischman, Esq.<br>**DAVIS POLK & WARDWELL LLP**<br>1600 E. Camino Real<br>Menlo Park, CA 94025<br>Tel: (650) 752-2021<br>Fax: (650) 752-3621<br>Email:<br>neal.potischman@davispolk.com<br>*Attorneys for Plaintiffs*<br>*Denis O'Brien and Digicel Group, Ltd.* | Ed Susolik, Esq.<br>Javier H. van Oordt, Esq.<br>Michael J. Wright, Esq.<br>**CALLAHAN & BLAINE, APLC**<br>3 Hutton Centre Drive, Ninth Floor<br>Santa Ana, CA 92707<br>Tel: (714) 241-4444<br>Fax: (714) 241-4445<br>Email: es@callahan-law.com<br>jvo@callahan-law.com<br>mwright@callahan-law.com<br>*Attorneys for Defendant*<br>*Donald MacAllister* |

Keith G. Wileman, Esq.
**VEATCH CARLSON, LLP**
700 South Flower Street, Suite 2200
Los Angeles, CA 90071
Tel: (213) 404-1146
Fax: (213) 383-6370
Email: kwileman@veatchfirm.com
*Attorneys for Defendant*
*Donald MacAllister*

[X]  **BY ELECTRONIC MAIL:** I transmitted the foregoing documents by electronic mail to the party(s) identified on the attached service list by using the electronic mail as indicated. Said electronic mail were verified as complete and without error.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 11, 2013, at Santa Ana, California.

*/s/ Donald MacAllister*
Donald MacAllister
In Pro Per

1